**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| BARBARA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:15cv488-WHA |
| | ) | |
| ALLSTATE PROPERTY AND | ) | (wo) |
| CASUALTY INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Final Summary Judgment of Allstate Property and Casualty Insurance Company (Doc. #24) and Plaintiff's Response to Defendant's Motion for Final Summary Judgment and Renewed Motion for Partial Summary Judgment on the Limited Issue of Which Law Governs this Matter (Doc. #27).

The Plaintiff filed a Complaint in the Circuit Court of Montgomery County, bringing a claim for breach of contract, and seeking compensatory and punitive damages.   (Doc. #1-4).   The case was removed on the basis of diversity jurisdiction. No motion to remand was filed. Complete diversity of citizenship exists and the amount in controversy exceeds $75,000. Therefore, the court has diversity subject matter jurisdiction pursuant to 28 U.S.C. §1332.

For reasons to be discussed, Brown's Renewed Motion for Summary Judgment is due to be DENIED and Allstate's Motion for Summary Judgment is due to be GRANTED.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and    . . .

the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

This case involves an issue of automobile uninsured motorists insurance coverage for a single car accident in which Brown, the insured, was injured and which happened in Alabama. Brown is a resident of South Carolina. At the time of the accident she had an Auto Insurance Policy issued by Allstate in South Carolina. The court has previously ruled that South Carolina, rather than Alabama, law applied to the issues presented by these motions. (Doc. #23).

Some relevant provisions of the policy at issue are as follows:

What Law Will Apply

If a covered loss to the **auto,** a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside South Carolina, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened.

* * *

Uninsured Motorists Insurance—Coverage SS

* * *

An Uninsured Auto is
5.  a phantom **motor vehicle** which causes:
a. **bodily injury** to an insured person without physical contact with the insured person or with a motor vehicle occupied by that person.
b. **property damage** to the insured auto without physical contact between the vehicles.
The facts of the accident must have been witnessed by someone other than the owner or operator of the insured vehicle, provided, however, the witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit.

* * *

Proof of Claim; Medical Reports
Any person making a claim for bodily injury must give us written proof of claim as soon as

practicable. Any person making claim for property damage must submit written proof of claim within 60 days, unless we extend this time in writing. All proof of claims must include all details we need to determine the amounts payable.

\* \* \*

Conformity with State Statute
These coverages are intended to be in full conformity with the South Carolina Uninsured Motorists Law. If any provision of this coverage is in conflict with such Law, the provision is amended or eliminated to conform with such law.

Action Against Us
No one my bring an action against us in any way related to the existence or Amount of coverage, or the amount of loss for which coverage is sought, under Part 3—Uninsured Motorists Insurance, Coverage SS, unless there is full Compliance with all policy terms and, except as provided below, such action is Commenced within two years after the date of the accident.

Doc. #28-1, p. 6, 13-14, 17.

In her deposition, Brown states that she was driving in Alabama on the day of her accident and saw something in the lane in which she was traveling. She saw a gold truck right off the road to the right of her, so she swerved to the left to avoid the object in the road, then she overcorrected or overcompensated and ultimately lost control of the vehicle, running off the road and overturning. (Doc. #25-2 at p.41:13, 44:13-16, 45:5-7, 52:23-53:2).

Brown made a claim under her Allstate Auto Insurance Policy. Allstate did not pay her claim. The initial denial of claim letter stated that under the policy, if a phantom vehicle causes injury or damage without physical contact between the vehicles, the facts of the accident must have been witnessed by someone other than the owner or operator of the vehicle. The letter stated that the affidavits submitted by Brown stated that the affiants saw an F150 parked close to the road and heard the sounds of tires squealing but did not see the accident. (Doc. #28-1 at p.179). The second letter, dated April 30, 2015, was in response to a letter from Brown's attorney. The letter states that the witnesses did not observe the collision or the events leading up to it. The letter

states that it is the position of Allstate that the affidavits do not prove that a phantom vehicle caused this accident, and that those affidavits are not enough because none of the affiants witnessed the actual collision.   (Doc. #28-1 at p.186).

The affidavits submitted[1] state that the affiants noticed a Ford F150 parked on the side of Interstate 85.   They affiants also state that they heard tires squealing and then saw the subject vehicle leaving the roadway at the approximate location of the Ford F150.   The affiants state that the following is true and correct in every particular.   (Doc. #25-1 at p.2-5).

On September 15, 2015, in response to Allstate's Motion to Bifurcate and Stay Discovery filed in this case, Brown submitted new affidavits from the witnesses.   (Doc. #16-1).   These new affidavits contain the statement, "[a] false statement concerning the facts contained in this affidavit may subject the person making the false statement to criminal penalties as provided by law." (Doc. #16-1 at p.31, 33).

### IV. DISCUSSION

#### A.   Law Which Applies

The choice-of-law policy provision within the subject Auto Insurance Policy, as set out above, is entitled "What Law Will Apply," and states that " [i]f a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside South Carolina, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened." (Doc. #28-1 at p.6).

---

1  Some of the exhibits cited were filed under seal. In this Memorandum Opinion and Order, the court has not revealed any of the confidential information within the exhibits.

A previously filed Motion for Partial Summary Judgment sought a judgment that Alabama law applies to Brown's claims. This court denied the motion, and concluded that the law of the state of contract formation applies to coverage issues before the covered loss choice-of-law provision at issue applies, relying in part on *Hollins v. Adair*, No. 2013 CA 1622, 2014 WL 2547977 (La. App. 1 Cir. June 3, 2014) (Doc. #23 at p.4-5).

In her renewed motion, Brown argues that Allstate has admitted that there is coverage under the policy, so, because there is a covered loss, and the accident occurred in Alabama, Alabama law applies. In support, Brown points to Admissions filed by Allstate. Allstate was asked to admit that Plaintiff has complied with all of the terms and conditions of any policies in effect with Defendant, to which Allstate stated, "Allstate does not aver that Ms. Brown has breached material conditions precedent to coverage." (Doc. #28-1 at p.36-37). Brown has also cited to Allstate's Answer in which Allstate stated that Brown complied with all conditions regarding notification of the claim and submission of information to date and that the policy was in full force and effect. (Doc. #2). Finally, Brown has argued for the first time in her Reply that Allstate failed to raise the affirmative defense of a lack of condition precedent to coverage.

Allstate's response to these arguments is that there is a difference between conditions precedent to coverage and the requirements for a covered occurrence within the terms of the policy. Allstate states that the "Proof of Claim" provisions were satisfied by Brown's submission of her claim, but that she cannot meet the requirements of the "phantom vehicle" provision to establish that there was a covered occurrence.

Upon review of the policy, and the cited statements by Allstate, the admission by Allstate has not admitted that there was a covered occurrence under the policy, only that conditions precedent to coverage were met. The requirement of affidavits is within the definition of

uninsured auto. (Doc. #28-1 at p.14). Although Brown has cited to South Carolina authority for the proposition that the affidavit is a condition precedent, the courts have identified it as a condition to recovery of damages, or to proceed in court. *Cf. Enos v. Doe*, 669 S.E.2d 619, 624 (S. C. Ct. App. 2008) ("Without a sworn affidavit, a plaintiff has no right of action. In other words, without the affidavit, she has no right to bring her case to court."). "Proof of Claim," on the other hand, is in a separate section of the policy, and requires written proof of the claim within specified time periods as a condition precedent. (Doc. #28-1 at p.16). The policy states that South Carolina law applies unless a "covered loss" occurred outside of the state. (Doc. #28-1 at p.6). Therefore, this court again concludes that South Carolina law applies to determine the threshold issue of whether Brown's accident falls within the policy provisions for injuries caused by an uninsured motorist, and Allstate's admissions as to conditions precedent does not alter that conclusion.

B. Coverage Issues

Allstate moves for summary judgment on the ground that Brown failed to provide an affidavit that complies with the requirements of South Carolina statutory law. Allstate cites to South Carolina Code §38-77-170 which provides as follows:

> If the owner or operator of any motor vehicle which causes bodily injury or Property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:
>
> * * *
>
> 2. the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle; provided however, the witness must sign an Affidavit attesting to the truth of the facts of the accident contained in the affidavit;
>
> * * *

7

> The following statement must be prominently displayed on the face of the affidavit provided in item (2) above: A FALSE STATEMENT CONCERNING THE FACTS CONTAINED IN THIS AFFIDAVIT MAY SUBJECT THE PERSON MAKING THE FALSE STATEMENT TO CRIMINAL PENALTIES AS PROVIDED BY LAW.

Allstate states that the affidavits Brown filed before this action commenced did not comply with this statute because the affiants did not witness the accident and the false statement language is not contained in the affidavits. Allstate further argues that although Brown submitted corrected affidavits after filing suit, they were filed after the claim was denied, and, therefore, should not be considered. Allstate's position is that allowing for corrected affidavits to be filed after the driver has filed suit would nullify the intent of the statute. Finally, Allstate argues that even considering the untimely affidavits, Brown has failed to meet the requirement of the statute. The court addresses each of these arguments in turn.

1. Issue of Timing of Affidavits

Brown argues that Allstate has failed to cite any law that governs the timing of the submission of the affidavits. Brown argues that the Allstate policy does not require the statutory language of the South Carolina Code, but only requires that the witness sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit. Brown argues that South Carolina law cannot override the plain language of the policy Allstate drafted, and that the policy does not specify timing of the affidavits.

Addressing Brown's argument that the policy applies over the requirements of South Carolina law, the court notes, as set out above, that the policy at issue specifically states that coverage is "intended to be in full conformity with the South Carolina Uninsured Motorists Law. If any provision of this coverage is in conflict with such law, the provision is amended or

eliminated to conform with such law." (Doc. #28-1 at p. 17).  The court, therefore, finds Brown's arguments to the contrary to be unavailing.

In *Tucker v. Doe*, 776 S.E.2d 121, 130 (S.C. Ct. App. 2015), *reh'g denied* (Oct. 19, 2015), *reh'g denied* (Nov. 19, 2015), a plaintiff submitted a non-compliant witness affidavit on July 14, 2010, and then a second affidavit with the required statutory language on March 3, 2011, after suit was filed on May 14, 2010.  The court did not rule on the issue of whether this procedure was appropriate, however, stating, "Doe further asserts the revised Affidavit, which was submitted nearly ten months after the commencement of the suit, was untimely. We find this argument is not preserved for review because it was never raised to or ruled upon by the circuit court."

Allstate has cited numerous South Carolina cases that emphasize the mandatory nature of the South Carolina statutory requirements for uninsured motorist coverage.  *See, e.g., Bradley v. Doe,* 649 S.E. 2d 153, 160 (S.C. Ct. App. 2007) (stating "[a] plaintiff's strict compliance with the affidavit requirement is mandatory.").  In *Collins v. Doe*, 574 S.E.2d 739 (S.C. 2002), the Supreme Court of South Carolina reviewed the South Carolina Court of Appeals' ruling that the mandatory affidavit requirement is satisfied when a plaintiff offers the "functional equivalent" of a complying affidavit, in the form of a witness's trial testimony.  The Supreme Court of South Carolina reversed, stating that the "statute makes no provision for the functional equivalent of an affidavit." *Id.* at 743.  The court identified three mandatory requirements of the state statute which require strict compliance:  the accident must have been witnessed by someone other than the owner or operator of the insured vehicle, the witness must sign an affidavit, and the prescribed disclaimer must be prominently displayed on the face of the affidavit. *Id.*  The court explained that the uninsured motorist coverage affidavit requirement serves three purposes:  fraud prevention, for which the "legislature's chosen vehicle" is a "sworn affidavit prominently

9

displaying the prescribed disclaimer;" tangible evidence that the insured has a good faith basis for making the claim; and a notice function in providing factual information with which to assess and evaluate the claim. *Id.*

Strict compliance with the statutory requirement is not a mere matter of form, but is required by South Carolina law. Allowing an affidavit which does not contain the mandatory elements to be amended at a point after suit has commenced would be in derogation of the purposes of the statute, as defined by the Supreme Court of South Carolina, particularly the purposes of providing a good faith basis for making the claim, and notice of the factual information in assessing and evaluating the claim before being subjected to a suit. Summary judgment is, therefore, due to be GRANTED as to the contract claim on the basis that the affidavits initially submitted to Allstate did not conform with the mandatory requirements of the statute, and that the amended affidavits were untimely.

2. Issue of Content of the Affidavits

Allstate has argued that, even assuming the corrected affidavits could be considered, the information within the affidavits is insufficient to meet the requirements of the policy and South Carolina law because the affiants did not witness the accident. Allstate cites to Brown's deposition testimony in which she stated that she saw debris in the road and saw the F150 to the right of the debris, so she swerved to the left, overcorrected and lost control of the car, hit the guardrail, and then her vehicle rolled. (Doc. # 25-2 at p.41, 52:18-53:8). The witnesses who provided affidavits stated that they saw the Ford F150 on the side of the road, heard the tires sliding, and saw Brown's car leave the roadway. Allstate argues that there is no witness who saw the accident, that the witnesses only stated that they heard the car and then saw it leave the roadway.

Brown responds that circumstantial evidence of the circumstances of the accident is sufficient, and that a witness does not have to see the accident, citing *Gilliland v. Doe*, 529 S.E. 2d 626 (S.C. 2004) and *Wausau Underwriters Ins. Co. v. Howser*, 422 S.E.2d 106 (S.C. 1992).

The South Carolina Court of Appeals has applied *Gilliland* and *Wausau,* as well as *Bradley,* 649 S.E. 2d at 153, in evaluating whether the uninsured motorist vehicle affidavit requirement was met when an affiant saw a driver swerve around an object in the road which had been dropped by another vehicle and then collide with a column. *See Tucker v. Doe*, 776 S.E.2d 121 (S.C. Ct. App. 2015). The *Tucker* court explained that in South Carolina, for uninsured motorist coverage, a witness to an accident must attest to "what actions of the unknown driver contributed to the accident." *Tucker*, 776 S.E.2d at 127. The *Tucker* court also explained that there is a statutory requirement that the independent witness "attest to facts that provide at least some causal connection between an unknown driver and the accident." *Id.* at 129 (citing *Wausau Underwriters Ins. Co*., 422 S.E.2d at 109-10). The *Tucker* court described the test for the sufficiency of evidence of a causal connection, as applied to the statutory affidavit requirement, as something less than proximate cause and something more than "the vehicle being the mere site of the injury." *Id.* at 129 (quoting *Gilliland*, 592 S.E.2d at 628).

In *Gilliland*, the witness saw an accident; specifically, she saw the lights of two cars, saw the insured's car leave the roadway, and saw the lights of the other car on the insured's bumper, which was sufficient circumstantial evidence to meet the witness requirement. *Id.* at 127 (citing *Gilliland*, 592 S.E.2d at 629).

In *Bradley*, the court held that the affiant witnesses could not satisfy the affidavit requirement of the statute because "none of the affiants actually saw Bradley swerve to avoid a trash bag in the road and collide with the tree." *Bradley*, 649 S.E.2d at 633. "None of Bradley's

affiants had personal knowledge of the facts of the accident, and their observations before and after the accident did not establish with reasonable certainty a causal connection between Bradley's injury and an unknown vehicle." *Id.* at 634–35.

In *Tucker*, the driver of a truck had attempted to change lanes behind a car but was prevented from doing so by a car passing in the left lane.  He then saw an object his lane which he was unable to avoid and which caused him to lose control of the truck.  *Tucker*, 776 S.E.2d at 124. An affiant stated that he witnessed the accident and saw a truck and car veer suddenly as if to avoid something in the road, and strike a pillar. *Id.*  The unknown driver involvement was alleged to be the vehicle which dropped the object in the roadway which the plaintiff struck.  *Id.* at 125. In comparing the affidavit to the affidavit in *Bradley*, the *Tucker* court emphasized that "the affidavits of independent witnesses must contain some independent evidence of an unknown vehicle's involvement in the accident. Bradley failed to comply with the statute's mandate." *Id.*   The *Tucker* court distinguished the facts before it from those in *Bradley* because the affiant in *Tucker* actually "observed Tucker swerving as if to avoid an object in the roadway and then colliding with a concrete column."  *Id.* at 129.  The court concluded that the affidavits in that case met the statutory requirement even though they did not provide a clear answer to the question of proximate cause. *Id.*

An approach similar to that which Brown argues for in this case was advocated for in a dissenting opinion in *Bradley* which was not adopted by the South Carolina Court of Appeals; namely, that the attesting witness need not see the accident itself.  649 S.E.2d at 162 (dissent) (stating, "I find the critical query in these matters is not whether an independent witness has observed the actual accident itself, but rather it is whether an independent witness has observed evidence of an unknown vehicle causing bodily injury or property damage to the insured.").

12

Because this approach has not been adopted in a majority opinion in a case decided by South Carolina courts, this court, sitting in diversity, will follow the holdings of the South Carolina cases discussed. *See Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002).[2]

The holdings of the courts of South Carolina, particularly in *Wausau*, *Gilliland*, *Bradley*, and the analysis of those cases in *Tucker*, establish that to satisfy the statutory requirements regarding uninsured motorist coverage where the uninsured driver's involvement causes an insured driver to swerve in the road and lose control of the vehicle, an affiant must see the insured driver swerve and provide "some facts" as to the "causal connection between an unknown driver and the accident." 776 S.E.2d at 129. In light of these cases, the court concludes that the affidavits presented by Brown in this case are insufficient as a matter of South Carolina law. The affidavits state that the affiants saw a parked Ford F150 at the side of the roadway, heard tires squealing, and saw Brown's vehicle leave the roadway. Unlike the affidavit in *Tucker*, there is no statement that the affiants actually observed the accident, or that they observed Brown's car at the time that the car swerved away from the parked truck which led Brown's car overcorrect and to leave the roadway near the parked truck. The affiants in this case have only attested to events before and after the uninsured vehicle allegedly caused the accident, which is insufficient under South Carolina law because they have attested to little more than "the vehicle being the mere site

---

[2] Brown has also advanced a sufficiency of the evidence argument, stating that a jury can weigh testimony to determine whether the affiants witnessed the accident. The *Tucker* court noted the use of the word "testimony" in *Gilliland* and stated that although throughout the opinion the court referred to "testimony," under *Collins*, "a plaintiff cannot substitute trial testimony for the statutory affidavit requirement. 352 S.C. at 471, 574 S.E.2d at 743. The court concluded that "[g]iven that our supreme court in *Gilliland* acknowledged that holding in *Collins,* we find the relevant witness observations discussed in *Gilliland* must have been included in the witness's affidavit." *Tucker,* 776 S.E.2d 121, 127 n.2. Therefore, the court will follow South Carolina and view the sufficiency of the affidavits themselves.

of the injury." *Gilliland*, 592 S.E.2d at 628. Therefore, summary judgment is due to be GRANTED on this alternative basis as to the breach of contract claim.

### C.  Punitive Damages and Bad Faith

Brown's Complaint contains a single claim for relief for breach of contract. (Doc. #1-4). Within that claim, however, Brown refers to a denial of her claim in bad faith and to punitive damages. Allstate moves for summary judgment on the basis that there is no evidence of bad faith refusal to pay because Allstate had a reasonable basis for denying her claim when Brown failed to provide affidavits with the required language and from affiants who had witnessed the accident. Allstate also contends that South Carolina law requires proof of a fraudulent act for punitive damages.[3] Finally, Allstate contends that under South Carolina law, punitive damages cannot be awarded for injury resulting from a collision with an uninsured motorist.

Brown contends that Alabama law governs bad faith in this case because the substantive law of Alabama applies. Under the insurance policy at issue, however, South Carolina law applies, and the law of the state where the accident happened applies only if there is a covered loss under the policy. (Doc. #28-1, p. 6). As discussed above, there was no covered loss under the policy because Brown did not meet the mandatory, statutory requirements for affidavits and/or the requirement of a witness to the accident, to make this a covered loss. Therefore, Alabama law does not apply.[4]

---

3  Brown treats the request for punitive damages as part of her bad faith claim. (Doc. #27 at p.18).
4  Brown also advances an argument that the appropriate procedure under Alabama law would be a motion to dismiss under Rule 12(b)(1), citing *Ex parte Safeway Ins. Co. of Ala., Inc.*, 960 So. 2d 344, 352 (Ala. 2008). That holding was modified, however, in a case involving a "phantom driver," to allow dismissal under Rule 12(b)(6). *Ex parte Safeway Ins. Co. of Ala., Inc.*, 148 So.3d 39, 41–42 (Ala.2013), (*Safeway* II) *as modified on denial of reh'g* (Dec. 13, 2013). Under *Safeway II*, if a plaintiff "cannot establish the fault of the phantom driver, then he cannot prove bad faith and, accordingly, Safeway may prevail on a Rule 12(b)(6) motion to dismiss." This court

In general, under South Carolina law, "[a]n insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Cock–N–Bull Steak House, Inc. v. Gen. Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996). "[T]he covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. American Loyalty Ins. Co.*, 562 S.E.2d 659, 662 (S.C. Ct. App. 2002).

In response to the arguments advanced by Allstate under South Carolina law, Brown cites to Allstate's correspondence with her and argues that her claim was denied by letter on April 23 because witnesses did not see the accident, and was denied on April 30 because Allstate said there was no witnessing of a collision with an unidentified vehicle. Brown argues, therefore, that Allstate changed the characterization and stated that there was a collision, but that the law does not require there to have been a witness if there was a collision. Therefore, Brown argues, Allstate denied the claim without a reasonable basis for the denial.

As revealed in the correspondence (Doc. #28-1 at p.179, 186), Allstate was consistent in its denial of Brown's claim based on a lack of a witness to the accident which caused Brown's injuries and damages. As discussed above, the affidavits provided by Brown demonstrate that there was no witness who saw the accident itself. Therefore, Allstate had a reasonable basis to support its decision to deny benefits under the insurance contract. *See Cock–N–Bull Steak House, Inc.*, 466 S.E.2d at 730. Summary judgment is due to be GRANTED to any claim for bad faith or punitive damages.

---

finds, therefore, that even if Alabama law applies, a Rule 56 motion is not inappropriate on this issue, and summary judgment would be due to be GRANTED.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. Allstate's Motion for Summary Judgment (Doc. #24) is GRANTED.

2. Brown's Renewed Motion for Summary Judgment (Doc. #27) is DENIED.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 2nd day of May, 2016.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE